IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MARK L. BROWN, )
)
        Plaintiff, )
)
v. ) 1:18CV658
)
ANDREW SAUL, )
Commissioner of Social Security,[1] )
)
        Defendant. )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Mark Lester Brown ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.     PROCEDURAL HISTORY

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income in February of 2015, alleging a disability onset date of January 1, 2014. (Tr. at 15, 212-

---

[1] Andrew Saul became Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Nancy A. Berryhill as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

221.)² His application was denied initially (Tr. at 126-130, 80-101) and upon reconsideration (Tr. at 102-25, 139-156). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 157-159.) Plaintiff, along with his representative and an impartial vocational expert, attended the subsequent hearing on March 29, 2017. (Tr. at 15.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act from his alleged onset date of January 1, 2014 through September 26, 2017, the date of the decision. (Tr. at 30.) On May 30, 2018, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-5.)

II. <u>LEGAL STANDARD</u>

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hancock v. Astrue</u>, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1993) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere

---

² Transcript citations refer to the Sealed Administrative Record [Doc. #7].

scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period

of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" during the period from his alleged onset date of January 1, 2014 through the date of the decision, September 26, 2017. (Tr. at 17.) Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> diabetes mellitus; hypertension; chondromalacia; and degenerative disc disease, cervical spine and lumbar spine[.]

(Tr. at 18.) The ALJ found at step three that none of these impairments met or equaled a disability listing. (Tr. at 18.) The ALJ then assessed Plaintiff's RFC and determined that he could perform light work with the following, additional limitations:

> he may occasionally climb ramps/stairs. He may never climb ladders or scaffolds. He may occasionally balance, kneel, stoop, crouch[,] and crawl. He may occasionally reach overhead with his right dominant upper extremity. He may have no more than occasional exposure to hazardous conditions, such as unprotected heights, dangerous machinery, uneven surfaces, or bodies of water.

(Tr. at 19.) Based on the RFC determination, the ALJ found at step four of the analysis that Plaintiff could not perform any of his past relevant work. (Tr. at 28.) However, the ALJ

determined at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, he could perform other jobs available in the national economy. (Tr. at 29-30.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 30.)

Plaintiff now challenges the ALJ's RFC assessment in two respects. First, Plaintiff contends that the ALJ made improper credibility determinations and failed to provide specific reasons for rejecting his testimony regarding his symptoms. Second, he argues that the ALJ did not accommodate or give sufficient reason to reject the medical opinion of Dr. Analiz Rodriguez, one of Plaintiff's treating neurosurgeons.

After a thorough review of the record, as discussed in detail below, the Court agrees that the ALJ failed to properly evaluate or explain his evaluation of the medical opinions in this case, and particularly failed to evaluate Dr. Rodriguez's opinion in accordance with Social Security Ruling 96-2p and 20 C.F.R. §§ 404.1527(c) and 416.927(c), better known as the "treating physician rule." This rule generally requires an ALJ to give controlling weight to the well-supported opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. §§ 404.1527(c) and 416.927(c). However, if a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the case record," it is not entitled to controlling weight. Social Security Ruling ("SSR") 96-2p, Policy Interpretation Ruling Titles II and XVI:

6

Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188, at *5; 20 C.F.R. § 404.1527(c)(2); see also Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178. Instead, the opinion must be evaluated and weighed using all of the factors provided in 20 C.F.R. § 404.1527(c)(2)(i)-(c)(6), including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion.

Where an ALJ declines to give controlling weight to a treating source opinion, he must "give good reasons in [his] . . . decision for the weight" assigned, taking the above factors into account. 20 C.F.R. § 404.1527(c)(2). "This requires the ALJ to provide sufficient explanation for 'meaningful review' by the courts." Thompson v. Colvin, No. 1:09CV278, 2014 WL 185218, at *5 (M.D.N.C. Jan. 15, 2014) (quotations omitted); see also SSR 96-2p (noting that the decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight").[4]

Plaintiff presented opinion evidence in this case from one of his treating neurosurgeons, Dr. Analiz Rodriguez. Dr. Rodriguez performed Plaintiff's cervical fusion

---

[4] The Court notes that for claims filed after March 27, 2017, the regulations have been amended and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. However, the claim in the present case was filed before March 27, 2017, and the Court has therefore analyzed Plaintiff's claims pursuant to the treating physician rule set out above.

7

surgery with Dr. Wesley Hsu. (Tr. at 524, 531.) In summarizing the medical records, the ALJ noted that on January 19, 2016, Plaintiff "underwent C5-6, C6-7 discectomy with placement of intervertebral mechanical spacer/device, and arthrodesis from C5-C7 by Wesley Hsu, M.D." (Tr. at 23.) Plaintiff then saw Dr. Rodriguez for a follow-up appointment on February 23, 2016, and she subsequently completed a medical report and functional capacity evaluation. (Tr. at 447-52, 465-68.) In the evaluation dated March 4, 2016, Dr. Rodriguez explained that "[Plaintiff] has cervical myelopathy with left sided weakness. He had surgery to prevent progression of his disease. However, he will remain weak on the left side. He also has neck pain with pain into the left arm." (Tr. at 452.) On the Functional Capacity questionnaire, Dr. Rodriguez indicated that Plaintiff could sit for twenty minutes and stand for ten minutes at a time; would frequently need to change positions; could sit for 2 hours and stand/walk for 2 hours during an 8-hour workday; could occasionally lift up to 10 lbs. and carry up to 20 lbs.; is limited in pushing/pulling, simple grasping, and fine manipulation with both upper extremities; can occasionally bend, stoop, or kneel; can never squat, crawl, climb or reach above; cannot tolerate exposure to unprotected heights, being around moving machinery, or exposure to dust, fumes, gases, smoke, perfumes, and noise; and can occasionally drive automotive equipment. (Tr. at 447-50.) She further noted that these limitations were based on Plaintiff's upper extremity pain and lower left extremity weakness; that pain limits his ability to stay still and keep focus; and that he would probably miss work frequently due to exacerbations of pain. (Tr. at 450-52.) She noted that the limitations were supported by objective or clinical findings, including muscle spasm, nerve/muscle findings, disc abnormality, tenderness to palpitation, and limitation of motion. (Tr. at 450.) She noted that

Plaintiff's medications caused somnolence, and that he would need unscheduled interruptions at least 5 times in an 8-hour shift in order to shift, lie down, move about, stretch, apply ice or heat, or elevate his feet. (Tr. at 451.)

The ALJ assigned Dr. Rodriguez's opinion "partial weight" but included only the following explanation:

> [The ALJ] assigns partial weight to this opinion because it is not fully consistent with treatment notes from this provider.

(Tr. at 27.) However, the ALJ failed to identify any inconsistencies. As noted above, Dr. Rodriguez performed Plaintiff's surgery, but the ALJ does not explain how the surgery was inconsistent with the opined limitations. In addition, Dr. Rodriguez saw Plaintiff for a follow-up appointment on February 23, 2016, shortly before completing the evaluation and RFC. In reviewing the medical evidence, the ALJ summarized that appointment as follows:

> At the postoperative visit in February 2016, [Plaintiff] stated his pain [was] improving with Norco. Analiz Rodriguez, M.D., noted he should continue to refrain from any heavy lifting or strenuous exercise, and he has no issues with his incision, as it is well-healed. Dr. Rodriguez refilled Norco and Valium.

(Tr. at 23) (citing Tr. at 467). Even considering only this summary, it is not clear how the treatment note is inconsistent with Dr. Rodriguez' subsequent opinion. Moreover, review of the treatment note itself reflects additional evidence not included in the ALJ's summary. For example, the treatment note reflects that, "since surgery, [Plaintiff's] pain has not been well controlled," and that "he has complaints of left shoulder pain but states he has overall much improved strength in his BUE (L>R) since surgery." (Tr. at 467.) In addition, the physical examination reflects that Plaintiff continued to exhibit slightly decreased strength in his left upper extremity, a positive Hoffman's sign bilaterally, greater left than right, and reduced

9

strength in his lower left extremity. (Tr. at 468.) These findings appear consistent with Dr. Rodriguez's evaluation and RFC completed shortly thereafter, and it is not clear how the "opinion is not fully consistent with treatment notes from this provider" as summarily asserted by the ALJ.[5]

---

[5] In addition, the objective medical evidence, including MRIs and x-rays, corroborates Dr. Rodriguez's findings. For example, in the year prior to Dr. Rodriguez's opinion, Plaintiff had a lumbar MRI, reflecting:
1. Multilevel degenerative changes of the lumbar spine, most prominent at L3-L4 and L4-L5 resulting in varying levels of canal and foraminal stenosis.
2. Marrow edema within the L5 pedicles, right greater than left, is favored to be degenerative in nature secondary to adjacent facet inflammation.
3. There is 4 mm anterolisthesis of L4 on L5.

(Tr. at 655) (May 21, 2015). Plaintiff also had a cervical MRI reflecting "significant cervical stenosis at C5-6 and C6-7 with left foraminal stenosis at C5-6, T2 signal changes at C5-6 level but no syrinx appreciated," with findings of cervical myelopathy and the recommendation for surgery. (Tr. at 457) (November 17, 2016). Post-surgical x-rays reflected the anterior cervical discectomy and fusion with prevertebral swelling. (Tr. at 465.) In her opinion, Dr. Rodriguez specifically explained that Plaintiff's surgery was "to prevent progression" of his cervical myelopathy with left sided weakness, but that he still was expected to experience, and was experiencing, pain and weakness despite this procedure. (Tr. at 452.)

The Court also notes that with respect to treatment notes by other providers in the neurosurgery practice, the ALJ similarly included selective portions of the record, omitting evidence favorable to Plaintiff. For example, a pre-surgery note on December 22, 2015, reflects that Plaintiff had left leg weakness requiring use of a cane, by report and on examination, as well as hypothenar wasting and bilateral Hoffman's sign. (Tr. at 459-60.) In addition, in describing Plaintiff's 3-month post-surgical follow-up on April 26, 2016, with another provider in the neurosurgery group, the ALJ quoted Plaintiff's statement that "He is doing well," and noted that the numbness and tingling in Plaintiff's extremities had resolved. (Tr. at 24) (citing Tr. at 478). However, as with Plaintiff's previous treatment record, the ALJ omitted any reference to Plaintiff's reports of intractable and "persistent left shoulder pain" since the surgery. (Tr. at 478.) These records also document Plaintiff's need to continue with intermittent Norco and Valium for pain and muscle spasms as well as twice daily gabapentin "for neuropathic pain related to his [diabetes mellitus] and cervical stenosis." (Tr. at 478; see also Tr. at 484.) Significantly, updated cervical spine imaging from the same day indicates "questionable new trace retrolisthesis at C5-C6" and continued prevertebral swelling. (Tr. at 476.) Left shoulder x-rays taken the next month also revealed abnormalities, including os acromiale and "[m]ild degenerative changes of the left acromioclavicular joint." (Tr. at 490.)

The Court further notes that later records confirm Dr. Rodriguez's prediction that Plaintiff's pain and weakness was likely to continue. For example, a year later, treatment records from Plaintiff's primary care provider from May 22, 2017, reflect an assessment of "Severe cervical [degenerative disc disease] and residual [symptoms] despite spinal fusion 2016 (continued hand and UE weakness and numbness LUE>RUE, confirmed on exam), as well as gait impairment requiring cane at baseline, are unlikely to substantially improve throughout his life. (Tr. at 697.) According to Plaintiff's briefing, Plaintiff filed a subsequent application for disability benefits and was found disabled as of September 27, 2017, the day after the ALJ decision at issue in this case. (Pl.'s Br. at 3.)

In its Response, Defendant first argues that the treatment records contradict Dr. Rodriguez's opinion. However, the Court notes that the Commissioner, like the ALJ, selectively quotes the records, omitting evidence favorable to Plaintiff. See Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017). Moreover, unlike the Commissioner, the ALJ did not specify with detail *any* contradictions between Dr. Rodriguez's treatment notes and her opinion. As noted above, no inconsistency is readily apparent, the Court is left to guess as to what portions of Dr. Rodriguez's treatment records the ALJ found inconsistent with Dr. Rodriguez's opinion. This lack of explanation is further aggravated by the fact that no consultative examination or medical review was obtained, and the ALJ thus summarily found Dr. Rodriguez's opinion inconsistent with her treatment notes, without any explanation and without any medical review of those records or consultative examination of Plaintiff.[6] Moreover, the ALJ gave Dr. Rodriguez's opinion "partial weight," but failed to describe which limitations he accepted, which he did not, and why he did so. Thus, the Court cannot determine what portions of Dr. Rodriquez's opinion the ALJ rejected or how those unspecified portions of the opinion were inconsistent with Dr. Rodriguez's treatment notes.

The Commissioner also argues more generally that the ALJ was entitled to base Plaintiff's RFC on the record as a whole, which the Commissioner broadly contends did not support the limitations opined by Dr. Rodriguez. However, the ALJ specifically discounted Dr. Rodriguez's opinion solely based on its alleged inconsistency "with treatment notes from

---

[6] Indeed, at the hearing, the ALJ indicated that a consultative examination would be obtained, but none is included in the record. (Tr. at 77-78.)

this provider."[7] (Tr. at 27.) The ALJ did not, as the Commissioner now argues, discount the opinion based on its inconsistency with the record as a whole. As noted in Anderson v. Colvin, this Court's "[r]eview of the ALJ's ruling is limited . . . by the so-called 'Chenery Doctrine,' which prohibits courts from considering post hoc rationalizations in defense of administrative agency decisions. . . . Under the doctrine, a reviewing court 'must judge the propriety of [agency] action solely by the grounds invoked by the agency. . . . If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.'" Anderson v. Colvin, No. 1:10CV671, 2014 WL 1224726, at *1 (M.D.N.C. Mar. 25, 2014) (quoting Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194 (1947)).

Ultimately, the Court concludes that remand is required so that the ALJ can provide specific reasons, supported by the evidence in the case record, for his treatment of each piece of opinion evidence, treating and non-treating, in a manner which allows meaningful judicial review. See Day v. Astrue, No. CIV 3:10CV0014, 2010 WL 2735702, at *5 (E.D. Va. June 16, 2010), report and recommendation adopted, No. 3:10CV14, 2010 WL 2756713 (E.D. Va. July 12, 2010) (citing 20 C.F.R. §§ 416.927(f)(2)(ii); 416.927(d)(2)) ("When an ALJ evaluates an opinion of any medical source—whether treating or nontreating—he is required to 'explain in

---

[7] In making this assertion, the ALJ cites "Exhibit 6F," which consists of more than 70 pages of medical records from Wake Forest Baptist Medical Center, including records from both Plaintiff's primary care providers and multiple providers in the neurosurgery department, of which Dr. Rodriguez is a part. (Tr. at 453-523.) The Court reads the ALJ's statement as an assertion that Dr. Rodriguez's opinion was inconsistent with Dr. Rodriguez's treatment notes, which are included in Exhibit 6F, and discussed in full above. It is possible, but not clear for purposes of judicial review, that the ALJ intended to refer to all of Plaintiff's providers at WFBMC. However, this distinction makes no difference in the present case. As set out above, the ALJ's decision failed to explain how any of Dr. Rodriguez's own treatment notes, or other treatment notes included in Exhibit 6F, are inconsistent with Dr. Rodriguez's opinions.

the decision the weight given' thereto and 'give good reasons in [his] . . . decision for the weight.'").[8]

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #11] should be DENIED, and Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #9] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 24th day of February, 2020.

/s/ Joi Elizabeth Peake
United States Magistrate Judge

---

[8] Given this recommended remand, the Court need not reach Plaintiff's additional contentions, as all of these matters can be raised for further consideration before the ALJ.